**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**CHARLES E. RICHARDSON,**

    **Plaintiff,**

vs.

    Civil Action 2:15-cv-3049
    Judge George C. Smith
    Magistrate Judge Kimberly A. Jolson

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Charles Richardson, brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for social security disability insurance benefits ("DIB") and supplemental security income ("SSI"). For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

**I.     FACTUAL AND MEDICAL BACKGROUND**

Plaintiff filed his applications for benefits in June 2010, alleging that he has been disabled since January 1, 2008, due to arthritis in his neck and right shoulder, left knee problems, pinched nerves in his neck, shakes, high blood pressure, high cholesterol, colon problems, and depression. (Tr. 244, PAGEID #328). Following initial administrative denials of Plaintiff's applications, a hearing was held before Administrative Law Judge ("ALJ") Ken B. Terry, (Tr.

1

26–62, PAGEID #106–42), who determined that Plaintiff was not disabled. (Tr. 11-21, PAGEID #91–101). The Appeals Council denied Plaintiff's request for review (Tr. 1–4, PAGEID #81–84), leaving ALJ Terry's decision as the Commissioner's final decision.

Plaintiff filed an action in this Court seeking judicial review of the Commissioner's decision. *Richardson v. Comm'r of Soc. Sec.*, No. 2:12-cv-673 (filed July 26, 2012). Subsequently, the Court remanded the matter to the Commissioner for further administrative proceedings. *Id.* at Doc. 17, 20; *see also*, Tr. 1094–1103, PAGEID #1183–92. On remand, the Appeals Council vacated ALJ Terry's decision and remanded the matter to a new ALJ, Ryan Glaze. Pursuant to the Appeals Council's order, ALJ Glaze held two hearings, the first on March 27, 2014, Tr. 1003–52, PAGEID #1091–1140, where ALJ Glaze heard testimony from Plaintiff, James McKenna, M.D., a medical expert, and John Finch, a vocational expert. At the second hearing, ALJ Glaze heard testimony from Plaintiff, and Hermona Robinson, a second vocational expert. (Tr. 1053–71, PAGEID #1141–59). ALJ Glaze issued an unfavorable decision on December 4, 2014. (Tr. 975–96, PAGEID #1063–84). The Appeals Council denied Plaintiff's request for review (Tr. 967–69, PAGEID #1055–57), and ALJ Glaze's decision became the Commissioner's final decision.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. 13), the Commissioner's Memorandum in Opposition (Doc. 15), Plaintiff's Reply (Doc. 16), the administrative record (Docs. 11 and 12), and the record as a whole.

**A. Personal Background**

Plaintiff was 49 years old on the alleged onset date of disability. (Tr. 20, PAGEID #100). He has a college degree in security/law enforcement. (Tr. 245, PAGEID #329). His prior work

experience includes work in a restaurant busing tables; light industrial work for temporary services; and shipping, receiving and assembly work in a warehouse. (*Id.*).

### B. Testimony at the Administrative Hearings

#### 1. Plaintiff's Testimony

Plaintiff testified at the March 27, 2014 administrative hearing. At that time, he lived alone on the third floor of an apartment building without an elevator. (Tr. 1033, PAGEID #1121). He had taken the bus to the hearing, which was his usual means of transportation. (Tr. 1035, PAGEID #1123). He testified that he leaves home infrequently—normally only to go to the VA or to ADD (addictive disorders) classes. (*Id.*, Tr. 1044, PAGEID #1132). Plaintiff walks to and shops at a nearby grocery store. (Tr. 1036, PAGEID #1124). If he buys something heavy, a case of pop for instance, he pushes a grocery cart to his door then carries it up the steps. Otherwise, he pushes the shopping cart to the fence surrounding his apartment and carries his groceries the rest of the way. (*Id.*).

Plaintiff testified that the problems with his neck "are still the same," but he hasn't seen his doctor "in a while" because the doctor is difficult to reach. (Tr. 1037, PAGEID #1125). Plaintiff said that he exercises by walking a lot since he has no car—he no longer boxes, practices yoga, or runs. (*Id.*). He also performs stretching exercises he learned from physical therapy. (Tr. 1037-38, PAGEID #1125-26). Plaintiff testified that he sketches, draws, and paints for pleasure, and enjoys building model airplanes and cars. (Tr. 1038, PAGEID #1126).

Plaintiff acknowledged that his neck and shoulder symptoms were unchanged. (Tr. 1040, PAGEID #1128). He has to sit in certain positions and move around rather than sitting too long; he has numbness at the back of his neck; and has weakness in his shoulder blades. (*Id.*). His

symptoms increase when he lifts things like groceries, furniture, or chairs. (Tr. 1041, PAGEID #1129). He shaves his head and has cut himself because of difficulties with his shoulders and neck. (*Id.*). Plaintiff reported headaches once or twice a week, which are improved when he takes his blood pressure medication and lies down. (*Id.*).

Plaintiff acknowledged that he attended physical therapy in the past which helped "temporarily." (Tr.1041-42, PAGEID #1129-30). Once or twice a week, he uses a transcutaneous electrical nerve stimulator (TENS) unit to reduce his pain. (Tr. 1042, PAGEID #1130). Plaintiff estimated that, on an average day, his pain is between a 5-5.5 on a 0-10 visual analog scale. Plaintiff confirmed that he has looked for work but does not think he could do full-time work because he has no strength or endurance. (Tr. 1043, PAGEID #1131). He testified that he has friends that he gets along with. (*Id.*). Plaintiff felt his anger issues would also prevent him from working. (*Id.*). He testified that his anger issues are triggered when people speak to him in an abusive way. (*Id.*). Plaintiff said that he took an antidepressant medication but could not pronounce the name. (Tr. 1045, PAGEID #1133). His medication helped with anger issues and made him less easily frustrated. (*Id.*). Plaintiff also testified that he believes that his past alcohol abuse contributed to his anger problems. (Tr. 1039, PAGEID #1127).

At his supplemental disability hearing on September 9, 2014, Plaintiff felt that his impairments were getting worse because his arms and back are getting weaker. (Tr. 1064-65, PAGEID #1152-53). Plaintiff said he was unable to stand for more than 30 to 60 minutes or sit for more than 1 to 4 hours at a time because of pain in his back. (Tr. 1066, PAGEID #1154).

      2.  **Dr. James McKenna's Testimony**

 James McKenna, M.D. testified as the medical expert at the March 27, 2014 administrative hearing. (Tr. 1009-29, PAGEID #1097-1117).  Dr. McKenna reasoned that Plaintiff would have a listing level impairment in July 2010 based on the MRI, EMG, and Physical Medicine examination showing wasting or atrophy of the deltoid muscle on the right, and absent biceps reflexes bilaterally, although sensation remained intact. (Tr. 1013, PAGEID #1101).  Dr. McKenna found that the 2010 MRI of the neck showed moderate central canal stenosis with foraminal narrowing, but there was no indication of how severe the foraminal narrowing was and no indication of any C4-C5 nerve impingement.  Dr. McKenna also testified that a neurology evaluation for tremors, performed on June 1, 2010, showed normal deep tendon reflexes and full strength in all tested muscles of the elbows, wrists, and fingers, with a normal gate. (Tr. 1014, PAGEID #1102).  Dr. McKenna summarized the record at the time: "So we have conflicting evidence one month apart, one having listing level documentation of sensory loss, loss of reflexes, and weakness, and then a month before that we have a neurologist, an expert examiner, and we don't have loss of reflexes, don't have the loss of strength or the editor [phonetic].  So we -that's the problem. There's a little conflict in the file."  (Tr. 1014-15, PAGEID #1102-03).

 Dr. McKenna also testified that "I don't think I've got quite enough of a basis to meet or equal, Your Honor, just based on that one physical medicine contact, especially since it's conflicting with the neurologist's visit one month previously." (Tr. 1017, PAGEID #1105).  Dr. McKenna ultimately concluded that Plaintiff should have another medical evaluation to

5

determine whether or not the limitations identified in 2010 have persisted.  (Tr. 1018, PAGEID #1106).

In discussing Plaintiff's ability to ambulate, Dr. McKenna testified that there was no upper motor neuron lesion effect on the lower extremities, and Plaintiff has an effective gait.  (Tr. 1017–18, PAGEID #1105–06).  Dr. McKenna believed that Plaintiff could not lift more than 20 pounds occasionally and 10 pounds frequently with frequent pushing and pulling, but no overhead reaching with the right shoulder due. (Tr. 1021-22, PAGEID #1109–10).  He believed that Plaintiff could climb a shorter ladder (with five or six steps) and could frequently stoop, crouch, kneel, and balance.  (Tr. 1023, PAGEID #1111).  Plaintiff would also be limited to frequent forward or bench reaching, though he might have problems turning large objects over using his shoulder muscles. (Tr. 1023-24. PAGEID #1111-12). On the left, Plaintiff could occasionally reach overhead and frequently reach in other directions.  (Tr. 1024, PAGEID #1112; Tr. 1027, PAGEID #1115).

### C. Relevant Medical Evidence

Although the record contains a history of treatment for numerous issues, Plaintiff's arguments on appeal relate only to his physical condition. (*See* Doc. 13 at PAGEID #2134–39). Accordingly, the Court has limited its discussion of the record accordingly.

#### 1. Jacob Gordon, M.D.

Plaintiff consulted with a neurologist at the VA, Jacob Gordon, M.D., on June 16, 2014, due to his history of tremors. (Tr. 1935-38, PAGEID #2028-31).  Dr. Gordon noted in his report that when Plaintiff's name was called in the waiting area, he was sleeping with headphones in place.  (Tr. 1935, PAGEID #2028). Dr. Gordon also noted that it was his opinion that "the

history that was obtained had decreased reliability." (*Id.*). Dr. Gordon further noted that during the evaluation, Plaintiff reportedly emphasized his radiologic findings rather than his symptoms and referred to his Social Security disability claim. (Tr. 1937, PAGEID #2030). Plaintiff complained of nerve damage in his neck that was documented in his medical records and reported numbness in his fingertips. (Tr. 1935, PAGEID #2028). He said he had a pinched nerve in his fourth, fifth, and sixth vertebrae that caused a lot of pain and numbness. (*Id.*). He said he "don't have no biceps no more. Both sides." (*Id.*). He said his attorney for Social Security had told him to have it evaluated. (*Id.*). Plaintiff also reported that his hand shakes often and that his penmanship used to be better. (*Id.*).

During the examination, Plaintiff said that his neck was hurting and made a groaning noise. (Tr. 1937, PAGEID #2030). He was otherwise in no apparent distress. (Tr. 1936, PAGEID #2029). Dr. Gordon found no evident tremor during the examination. (Tr. 1937, PAGEID #2030). Plaintiff was able to write and draw during the examination with intact legibility, speed, and size. (*Id.*). There was no deficit in visual-spatial function. (*Id.*). Dr. Gordon also found that Plaintiff's muscle bulk seemed decreased at the biceps, but he was able to generate force. (*Id.*). Plaintiff's sensation to vibration was present and symmetric, as well as joint position. (*Id.*). Plaintiff's reflexes were present but decreased, and equal in both upper extremities. (*Id.*). Dr. Gordon indicated that although the evaluation was performed because of a reported tremor, no significant abnormal movement was observed. (*Id.*). He also expressed "concern about veterans involvement in motivation: if obtaining compensation is a significant goal for him, then chances for improvement of symptoms may he decreased." (*Id.*).

### 2. Yaw Ayesu-Offei, M.D.

Dr. Yaw Ayesu-Offei examined Plaintiff for disability purposes on April 30, 2014, following the initial remand administrative hearing. (Tr. 1902-08, PAGEID #1995-2001). Plaintiff reported to Ayesu-Offei that he could not work due to neck and low-back pain. (Tr. 1902, PAGID #1995). Plaintiff rated his pain severity at a level of 9 on a 0-10 visual analog scale. (*Id.*). He ambulated without any assistive device and said he could walk for 2 to 3 blocks at a time and lift 10 to 20 pounds. (*Id.*). Plaintiff estimated that he could sit for less than an hour and stand for 30 minutes at a time. (*Id.*). Plaintiff reported that he lived by himself and functioned independently. (*Id.*). Dr. Ayesu-Offei noted that Plaintiff walked into the office "pretty much briskly" and had no apparent difficulty with walking. (Tr. 1903, PAGIID #1996). He did not appear to be uncomfortable and did not exhibit any pain behaviors. (*Id.*). Plaintiff had good range of motion in his neck, but reported "a little bit of discomfort with full range of motion of the cervical spine." (*Id.*). Plaintiff also reported "very, very minimal discomfort with deep palpation of the lumbosacral spine." (*Id.*). Plaintiff was able to stand on tip toe, and squat halfway down, rising without assistance; straight leg-raising test was negative. (*Id.*). Manual muscle testing showed full strength and range of motion in the shoulders, elbows, wrists, and fingers of both upper extremities, and normal ability to grasp, manipulate, pinch, and coordinate in both hands. (Tr. 1906-07, PAGEID #1999-2000). Plaintiff also had full strength in the lower extremities. (*Id.*). Dr. Ayesu-Offei indicated that muscle atrophy was not present, nor was there any muscle spasm or spasticity. (Tr. 1906, PAGEID #1999). Flexion was minimally decreased in the lumbar spine but was otherwise normal. (Tr. 1903, PAGEID #1996). Dr. Ayesu-Offei

concluded that Plaintiff should be able to maintain at least sedentary-type activity "with no problems at all." (*Id.*).

Dr. Ayesu-Offei completed a medical source statement in which he opined that Plaintiff could lift and carry up to 20 pounds occasionally and 10 pounds frequently. (Tr. 1909, PAGEID #2002). Dr. Ayesu-Offei found that Plaintiff could sit for two hours at a time for total of eight hours in an eight hour workday, and could stand or walk for one hour at a time, for four hours each in an eight hour workday. (Tr. 1910, PAGEID #2003). He limited Plaintiff to occasional pushing, pulling and overhead reaching and to frequent reaching in all other directions with both hands. (Tr. 1911, PAGEID #2004). Dr. Ayesu-Offei opined that Plaintiff could frequently balance and only occasionally climb ramp or stairs, stoop, kneel, crouch or crawl, but never climb ladders and scaffolds. (Tr. 1912, PAGEID #2005).

### D. The Administrative Decision

On December 4, 2014, ALJ Glaze issued an unfavorable decision. (Tr. 975-96, PAGEID #1063-84). As in the previous decision, ALJ Glaze found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of January 1, 2008. (Tr. 978, PAGEID #1066). ALJ Glaze determined that Plaintiff had the following severe impairments: degenerative disc disease of the cervical spine, mild disc space narrowing lumbar spine and mild degenerative joint disease of the shoulders. (*Id.*). ALJ Glaze found that he did not, however, meet the requirements of an impairment listed in 20 CFR Subpart P, Appendix 1. (Tr. 981, PAGEID #1069). ALJ Glaze ultimately found that Plaintiff had the RFC to perform light work except that he can occasionally push and pull. (Tr. 983, PAGEID #1071). He may not reach overhead with the right upper extremity, but can reach overhead occasionally with the left upper extremity.

9

(*Id.*). All other reaching can be performed frequently. (*Id.*). He can occasionally use foot controls with the right lower extremity. (*Id.*). He can frequently balance; and occasionally stoop, kneel, crouch, and climb ramps, stairs, and short ladders. (*Id.*). He can never crawl or climb long ladders, ropes, or scaffolds. (*Id.*). He can work in environments requiring no more than occasional exposure to extremes of cold and to vibration. (*Id.*). Relying on the VE's testimony, ALJ Glaze concluded that Plaintiff can perform his past relevant work as a production assembler. (Tr. 995, PAGEID #1083). He therefore concluded that Plaintiff was not disabled under the Social Security Act. (Tr. 995, PAGEID #1083).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To this end, the Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *Canty v. Comm'r of Soc. Sec.*, 2016 U.S. Dist. LEXIS 142761 *3–4 (S.D. Ohio Oct. 14, 2016) (quoting *TNS, Inc. v. Nat'l Labor Relations Bd.*, 296 F.3d 384, 395 (6th Cir. 2002)).

### III. DISCUSSION

#### A. Listing 1.04A

The first issue Plaintiff presents is whether ALJ Glaze's determination that his back impairment does not meet Listing 1.04A for disorders of the spine is supported by substantial evidence. In particular, Plaintiff alleges that ALJ Glaze improperly "state[d] that in order to meet Listing 1.04A, Listing 11.00 must also be considered;" his decision is inconsistent with judicial findings; and that he incorrectly found that Plaintiff's impairments did not meet the durational requirements of the Act. (Doc. 13, PAGEID #2135-36).

#### 1. Proper Legal Standard And Harmless Error

As an initial matter, Plaintiff argues—and the Commissioner concedes—that ALJ Glaze's analysis of Listing 1.04 was not entirely correct. (*See* Doc. 15 at 4). Indeed, ALJ Glaze improperly considered the relationship between Listing 1.04A and Listing 11.00—but the limitations addressed in Listing 11.00 are irrelevant here because Listing 1.04A has no such requirement. Despite this mistake, the Commissioner argues that any error was harmless because substantial evidence supports ALJ Glaze's decision. The Sixth Circuit recognizes that any error with respect to an ALJ's step-three analysis is harmless unless the claimant can establish that he satisfied the listing in question. *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (2014); *see also* Chappell v. Commissioner, No. 1:14-cv-1005, 2015 U.S. Dist. LEXIS 86266, 2015 WL 4065261, at * 4 (W.D. Mich. July 2, 2015). The undersigned accordingly applies that standard here.

#### 2. Substantial Evidence

Listing 1.04A states:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine) [.]

20 C.F.R. Subpt. P. Appx. 1, Listing 1.04A.

There is no dispute that the record shows "evidence of nerve root compression." ALJ Glaze concluded, however, that Plaintiff had not experienced the other symptoms required by Listing 1.04A, including motor loss (atrophy with associated muscle weakness or muscle weakness) and sensory or reflex loss, on a sustained basis. (Tr. 981–82, PAGEID #1069–70). To be disabling, a physical or mental impairment must satisfy the so-called duration requirement, i.e., it must have "lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The burden of proof to show that a medical impairment meets or equals the clinical criteria of a listed impairment (relevant at step three of the sequential evaluation process) is upon the claimant. *Johnson v. Comm'r*, 652 F.3d 646, 651 (6th Cir. 2011). ALJ Glaze instead found that the medical findings supporting such symptoms "are present only intermittently" in the record. (Tr. 981, PAGEID #1069).

In analyzing the durational requirement, ALJ Glaze relied on the record showing that Plaintiff had:

- 4/5 strength in the right bicep and deltoid with 5/5 strength in triceps and other arm muscles in December 2009 (Tr. 663, PAGEID #648);

- 5/5 strength in March 2010 (Tr. 641, PAGEID #726);

- no deficits in strength in muscles of the upper extremities and no reflex abnormalities in June 2010 (Tr. 627, PAGEID #712);

- 4/5 muscle strength in 2 of 5 upper extremity muscles, absent biceps and brachioradialis reflexes, and mild atrophy of the right biceps and deltoid in July 2010 (Tr. 614, PAGEID #699);

- full strength in both upper extremities with absent bicep reflexes and bicep muscle wasting in August 2010 (Tr. 886, PAGEID #972); and

- full strength and range of motion in the shoulders, elbows, wrists, and fingers of both upper extremities, normal ability to grasp, manipulate, pinch, and coordinate with both hands, no muscle atrophy, muscle spasm, or spasticity, and no gross motor or sensory deficits in April 2014 (Tr. 1906, PAGEID #1999).

(Tr. 981–82, PAGEID #1069–70).

In addition, ALJ Glaze based his conclusion on Dr. McKenna's assessment. An ALJ's reliance on the opinion of a non-examining medical expert, such as Dr. McKenna, is proper if the expert's opinion is based on objective reports and opinions, which is the case here. *See Hance v. Comm'r of Soc. Sec.*, No. 1:08-cv-825, 2010 WL 883704 at *11 (S.D. Ohio Mar. 11, 2010) (an ALJ may "properly rely on the testimony of a non-examining medical expert in order to make sense of the record" where "an ALJ's reliance on the opinion of a non-examining expert's opinion is based on objective reports and opinions.") (citing *Buxton v. Haller*, 246 F.3d 762, 775 (6th Cir. 2011); *Loy v. Sec'y of HHS*, 901 F.2d 1306, 1308-09 (6th Cir. 2001)). Dr. McKenna opined that while Plaintiff satisfied the requirements of Listing 1.04A based solely upon a July

13

2010 exam, the remainder of the record was in "conflict."  Because of the conflict, Dr. McKenna ultimately concluded that "I don't think I've got quite enough of a basis to meet or equal, Your Honor, just based on that one physical medicine contact, especially since it's conflicting with the neurologist's visit one month previously."  (Tr. 1017, PAGEID #1105; *see also* Tr. 982, PAGEID #1070).

ALJ Glaze also used Plaintiff's own testimony to determine Plaintiff's symptoms.  In particular, Plaintiff testified that he lived in a third floor walk-up and could carry groceries, including cases of soda, to his apartment. (Tr. 1033, PAGEID #1121; Tr. 1036, PAGEID #1124).  In addition, when seen by his primary care physician at the VA in March 2010, Plaintiff reported working out for an hour daily and expressed concern about being able to continue being employed in the physical fitness area.  (Tr. 640–43, PAGEID #725–28).  When seen at the VA in July 2013,  Plaintiff reported that he did not have any issues with any activities of daily living and he "worked out on a daily basis (Running, Jump rope, yoga, boxing)."  (Tr. 1817, PAGEID #1910).  In December 2013, Plaintiff again reported that he lifted weights and practiced yoga. (Tr. 1851, 1865, PAGEID #1944, 1958).

In sum, substantial evidence supports ALJ Glaze's decision that the durational requirement is not satisfied, and Plaintiff has not otherwise shown that he satisfied Listing 1.04A.  Thus, ALJ's Glaze's legal error was harmless.  *See Forrest*, 591 F. App'x at 366 (holding that any step-three error is harmless unless claimant can establish that he satisfies the listing in question).  Moreover, "[n]o principle of administrative law or commonsense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand

might lead to a different result." *See Shkabari v. Gonzalez*, 427 F.3d 324, 328 (6th Cir. 2005). Here, the Court finds that a remand would lead to the same result.

### B. The District Court's Remand Order

Plaintiff additionally argues that the decision should be reversed because ALJ Glaze failed to follow the District Court's remand order. (Doc. 13, PAGEID #2137). Specifically, Plaintiff argues that the remand order instructed the ALJ to "make a detailed finding of whether Plaintiff meets Listing 1.04 under both readings of Listing 1.04." (*Id.*, citing to Tr. 1101).

During the March 27, 2014 administrative hearing, ALJ Glaze elicited medical testimony as to Listings 1.04A and 1.04C (Tr.1013-18, PAGEID #1101-06). Counsel for Plaintiff specifically interrupted the line of questioning and stated: "We've never alleged 104(C) at all." (Tr. 1018, PAGEID #1106). Counsel further represented that Plaintiff could not satisfy Listing 104C. (Tr. 1019, PAGEID #1107). Relying on counsel's representations, ALJ Glaze explained in his opinion:

> The District Court remanded the Administrative Law Judge decision of August 18, 2011 because of ambiguity as to whether listing 1.04 required a functional loss in order to meet that listing, specifically whether an inability to ambulate effectively was required in addition to nerve root compression. At the claimant's March 27, 2014 disability hearing, the claimant's representative stated that the claimant had never alleged that he met listing 1.04C, which requires an inability to ambulate effectively because of lumbar spinal stenosis, but had alleged only that he met listing 1.04A The prior Administrative Law Judge had focused on 1.04C, which led to the ambiguity identified by the District Court. The representative requested that the claimant's impairments be considered only in the light of listing 1.04A. The claimant's attorney has stated and repeated that the claimant's case "revolves purely around 1.04 A"(Exhibit 25E).

15

(Tr. 981, PAGEID #1069). ALJ Glaze proceeded to analyze Listing 1.04A only. Because of counsel's representations, the Court finds the ALJ's opinion does not run afoul of the District Court's remand order by not considering Listing 104C.

The Court additionally rejects Plaintiff's argument that the medical experts and ALJ Glaze committed reversible error by not analyzing the claim "under both readings of Listing 1.04." (Doc. 13 at 7). As noted above, the Commissioner concedes that functional loss is not required under Listing 104A. And while ALJ Glaze improperly discussed functional loss, substantial evidence supports his decision that Plaintiff does not meet Listing 104A because he fails the durational requirement. *See supra*.

### C. Plaintiff's Request to Submit Questions Dr. Yaw Ayesu-Offei

Plaintiff also argues that ALJ Glaze erred in denying his request to submit questions to Dr. Ayesu-Offei. An ALJ has discretion to determine whether additional evidence is necessary. *See* 20 C.F.R. § 404.1512(d); *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 275 (6th Cir. 2010) ("The ALJ has discretion to determine whether additional evidence is necessary."); *see also Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2011) (same). Moreover, "[a]bsent a gap in the record, the ALJ has no duty to re-contact the physician." *Starkey v. Comm'r of Soc. Sec.*, 2008 WL 828861, *4 (W.D. Mich. March 26, 2008) (citing *Johnson v. Barnhart*, 138 F. App'x 186, 189, 2 (11th Cir. June 17, 2005). Finally, "an Administrative Law Judge need re-contact a medical source only if the evidence received from that source is inadequate for a disability determination." *DeBoard v. Comm'r of Soc. Sec.*, 211 F. App'x 411 (6th Cir. 2006); § 404.1512(e).

Plaintiff based his request for interrogatories by alleging that during the examination, Dr. Ayesu-Offei did not have him remove his shirt, did not measure his biceps or forearms, did not request that he move or turn his neck or arms, and did not check his reflexes. (Tr. 1200; PAGEID #1291); *see also* Doc. 13, PAGEID #2138 (alleging that Dr. Ayesu-Offei's examination was "anything but comprehensive)). However, Dr. Ayesu-Offei's opinion noted that Plaintiff had good range of motion in his neck, had a "little bit" of discomfort with full range of motion in his cervical spine, and had no gross motor or sensory deficits (Tr. 1903, PAGEID #1996). He also found that Plaintiff had normal muscle strength and had no muscle spasms or atrophy and that spasticity, clonus, and primitive reflexes were not present. (Tr. 1905-06, PAGEID #1998–99). Considering Dr. Ayesu-Offei's report and the remainder of the record in this case, ALJ Glaze did not abuse his discretion in rejecting Plaintiff's request for interrogatories.

### IV. RECOMMENDED DISPOSITION

For the reasons stated, it is **RECOMMENDED** that the Plaintiff's statement of errors be **OVERRULED** and that judgment be entered in favor of Defendant.

### V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of The date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for The objection(s). A District Judge of this Court shall make a de novo determination of those portions of The Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept,

17

reject, or modify, in whole or in part, The findings or recommendations made herein, may receive further evidence or may recommit this matter to The Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to The Report and Recommendation will result in a waiver of The right to have The district judge review The Report and Recommendation de novo, and also operates as a waiver of The right to appeal The decision of The District Court adopting The Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO ORDERED.**

Date:   November 17, 2016                        /s/ Kimberly A. Jolson
                                                 KIMBERLY A. JOLSON
                                                 UNITED STATES MAGISTRATE JUDGE